# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-02146

Wilber Harris

    Plaintiff,

v.

MAKRIS LAW FIRM, P.C.,

LAW OFFICES OF CHRISTOPHER BRADSHAW-HULL

    Defendant(s).

---

## MOTION FOR / TO SHOW CAUSE

---

This action before the court should not be dismissed or moved to any other district court, on the grounds that it arises out of a breach of a current legal agreement and a breach of fiduciary duty. The agreement has an Alternative Dispute Resolution (ADR) clause built within the agreement. The Defendants knew if either party breached the agreement, (ADR) would ensue in order to resolve the dispute or controversy at issue.

**Under TITLE 9 U.S.C.,—ARBITRATION, §3. Stay of Proceedings where issues therein referable too arbitration.** I am asking this court to hear this matter in regards to the (ADR) process over disputes and controversies as being vague and not specific. Also I am asking the court to grant the Plaintiff monetary damages for the breach of contract and breach of fiduciary duty which are not relevant to disputes or controversies. One is a violation of contract terms and the other is a violation of the ethical rules of code of conduct.

## JURISDICTIONAL AND VENUE STATEMENT

### a. District Court jurisdiction

I am a U.S. citizen, who is domiciled in the state of Colorado. I filed suit against Makris Law Firm P.C., and the Law Offices of Christopher BradShaw-Hull in the U.S. District Court for Colorado alleging damage in excess of $75,000 caused by Defendants breach of contract and breach of fiduciary duty. Makris Law Firm P.C., and Law Offices of Christopher BradShaw-Hull are Texas Attorneys with businesses located in the city of Houston Texas.

b. Venue is proper in this district because the Defendants are Texas citizens and domiciled in the state of Texas. Therefore the Court has the authority granted by Congress of the United States under Subject Matter Jurisdiction complete diversity. 28 U.S.C. §1332.

## STANDARD OF REVIEW

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States. The breach of contract happened in the Southern District of Texas. However the legal agreement was signed in the District of Colorado where half of the action to join into the contract took place. This Court has the power to determine the validity of a breach of contract and a breach of fiduciary duty and therefore the district has jurisdiction pursuant to complete diversity. 28 U.S.C. §1332.

There is also a federal question of the enforceability of the arbitration agreement (ADR) when the Defendants breached the legal agreement. The Federal Arbitration Act (FAA) only binds both the Plaintiff and the Defendants to arbitrations in accordance with the Commercial Arbitration Rules. The (FAA) does not specify whether violability and enforceability still exist or are within the scope of the (ADR) process after a breach of contract is committed. A District Court in the United States has the rights granted by the Congress of the United States to hear any and all Federal question and complete diversity if the standards of diversity exist as a stand alone question.

**§2. Validity, irrevocability, and enforcement of agreements to arbitrate**

a written provision in a maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. (July 30, 1947, ch. 392, 61 Stat. 670.)

3

## **STATEMENT OF THE CASE**

Statement of facts, the Defendant, BradShaw-Hull on August 3, 2022 breached the agreement by asking for $85,000 from Chi St. Luke Baylor College of Medicine in order to settle a medical negligence case for their client Wilber Harris wherein is now the Plaintiff. The Hospital willingly accepted the offer. The breach occurred when Defendant unilaterally, on his own, decided to settle the case at $85,000 without Plaintiff's knowledge, consent, or signature to do so.

```
CROSS EXAMINATION
BY MR. LUCCIA:
Q Mr. Harris, my name is Frank Luccia. I represent the hospital.
I just have a couple of questions for you.
A Yes, sir.
Q It sounds to me like your understanding of the situation is
that the hospital offered to settle the case for $85,000, and
your lawyer accepted it. Is that your understanding?
A That is my understanding, but I didn't authorize him to
settle.
Q Okay.
A It was a misunderstanding of communication.
Q Well-I mean, have you-have you looked at the-the e-mail exchanges
between me and Mr. Bradshaw-Hull?


Harris - Cross 15

A I've seen some, but I haven't seen all. But -
Q Have you seen that, in fact, it was Mr. Bradshaw-Hull who
asked for 85,000, and the hospital that accepted. It wasn't the
hospital made an offer which you accepted; you made an offer
that the hospital accepted. Do you understand that?
A No, I do not; that's incorrect.

The hospital had stated an offer of 75,000, and when we talked
about it, when the Judge had ruled, you know, for the docket,
and in your favor as, you know, the partial summary, at that
time that's when I asked my attorney,
Mr. Bradshaw-Hull, to see what they were offering. We did not
```

4

```
state I would not accept it. He interpreted it as, okay, I'm
going to settle that. And then when he told me I had granted him
that fact, I said, no, that's not what we talked about. So, we
had that specific disagreement on what was said. And he might
have –




Q Okay.
A -- misinterpreted it accidentally, but I was, you know, pretty
straightforward. See what they offer, and if that's something
that, you know, I want to do, then I'll go ahead and settle it.
Q Okay.
A But I never said, I would settle with it ending up being
$85,000, because I was just thinking on it.
```

The Defendant's intentionally violated section five of the "Agreement", (**Clients approval for settlement**) where it states within the clause that "no settlement of any of the clients claims under this agreement shall be made without the complete approval of the client."

The Defendants willfully chose not to confer with the plaintiff for his consent in two ways: (1) by not informing the Plaintiff of the settlement offer made on his behalf to the Hospital, and (2) by not allowing the client to partake in settlement negotiations, before binding the plaintiff to the settlement agreement. This incompetence or wanton neglect by two very experienced attorneys with the combined skill and knowledge of over eighty years caused irreparable harm to their client by depriving the Plaintiff of his judicial rights and contractual rights.

5

Case 4:19-cv-04293   Document 82   Filed on 02/22/23 in TXSD   Page 5 of 6

counter-offer to St. Luke's, and initiate the payment process. Indeed, the record indicates that Mr. Bradshaw-Hull had the express authority to take those steps.

Mr. Bradshaw-Hull "believe[d] that on August 3, 2022, Wilber Mr. Harris authorized [him] to settle [Mr. Harris'] case." (Dkt. 65-1). Mr. Bradshaw-Hull argues that such belief was erroneous, the result of a misunderstanding between him and his client that was attributable to various health and family issues that Mr. Bradshaw-Hull was experiencing at the time. But given Mr. Bradshaw-Hull's experience, reputation, and ability, the Court cannot find that any misunderstanding that may have occurred—assuming there was an actual misunderstanding at all—was the fault of Mr. Bradshaw-Hull.

Indeed, the evidence submitted by both parties indicates that Mr. Harris either (1) expressly authorized Mr. Bradshaw-Hull to settle the case and "changed his mind" regarding the amount of the settlement two days later; or (2) expressly authorized Mr. Bradshaw-Hull to settle the case and "changed his mind" about whether he should have given Mr. Bradshaw-Hull that authority. (Dkts. 61-3, 65-1). The Court held an evidentiary hearing in order to give Mr. Harris the opportunity to rebut this evidence—*i.e.*, to testify that he never gave Mr. Bradshaw-Hull such express authority. But Mr. Harris provided disjointed and contradictory testimony during the hearing, and the Court disbelieves Mr. Harris' qualified, unclear assertions that he did not give Mr. Bradshaw-Hull express authority to settle his case. Instead, the Court finds that the record, and the testimony provided by Mr. Harris and Mr. Bradshaw-Hull, reflect that Mr. Harris gave Mr. Bradshaw-Hull authority to settle his case but "changed his mind"—for one reason or another—after

5

6

## The statue of frauds

C.R.S. § 4-2-201 governs contracts for sale of goods and provides: (1) Except as otherwise provided in the section, a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon, but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

That is, where a statue of frauds applies to a certain type of contract, the individual trying to enforce the contract has to have extrinsic proof through a writing signed by the other party that a contract was, in fact, entered into. The Defendants who are seeking to adjudicate this matter under the ADR clause knew or should have known the third element of the contract "the signing" was not memorialized by signature thus preventing the Defendants from being able to enforce a fraudulent contract they simply made up.

I am asking this court, which has jurisdiction to hear this matter before it, to not dismiss the case or remove it to another jurisdiction. The Plaintiff was financially harmed by the Defendant's failure and lack of adherence to the legal framework of the agreement between the plaintiff and the Defendants. The Plaintiff therefore was barred from exercising his rights under law to a trial by jury. The Defendants knew or should have known the Plaintiff had the right as

7

their client under the legal agreement. Only the client had the sole authority to approve any and all settlements.

Also Defendants allowed counsel to the Hospital to stipulate the terms of the agreement by stating on August 05, 2022 " Please tell him it is too late. We have a deal." The Defendants knew they lacked the authority to enter into a settlement agreement, thus making the actions of the Defendants fraudulent. The Defendants should have filed a motion on behalf of the Plaintiff to vacate the settlement agreement. Rule 11 of the Texas Rules and Civil Procedure, which was the governing law due to the initial lawsuit being filed in the Southern District of Texas, clearly states that if one party decides to back out of a deal before the court rules on it, or before it was filed with the court, the agreement is not enforceable.

As stated here by Hospital counsel, in their motion to enforce settlement it states ***"The fact that the party seeking to enforce the settlement apparently filed the agreement after the other party withdrew the consent to its terms does not change the fact that the party "filed" it for the purpose of Rule 11.*** This is striking, wherein the Defendants and counsel to the Hospital, Frank Luccia, knew if Plaintiff did withdraw his consent the settlement agreement would no longer be enforceable. In fact Plaintiff testified under oath he did not know about the settlement agreement or give permission to the Defendant to settle the case. The meeting of the minds which had to include the Plaintiff, never took place. If the Defendants believed the Plaintiff changed his mind prior to the filing or ruling by the court. There should be record of this during the negotiation (ie, I have to confer with my client or my client is aware of the terms and does not agree to them.) Nothing in the record shows either happening.

8

In fact, the court granted an evidentiary hearing for the sole propose of hearing from the Plaintiff due in part that the court had not heard from him. Rule 11 of the Texas Civil Procedures states clearly, the third and final element makes it unenforceable without the signing or a Signature Block for signing, and must be filed with the court before consent is withdrawn. Defendants knew this to be true and failed to argue this point before the court on behalf of the Plaintiff. Thus breaching the fiduciary duty to the Plaintiff. A court can only adjudge a case honestly where the evidence and material facts of the case are present before it.

The Plaintiff was not given the opportunity before the hearing to prepare a statement or confer with the Defendants as his counsel to what effect his testimony would have on the courts decision. The Defendants prevented the Plaintiff from benefiting from this insight concerning why the Hospital was filing a motion to enforce settlement. Also by not allowing the Plaintiff to submit his own evidence to contradict the disputed claims of the Defendants and the Hospital counsel filings to the court.

Plaintiff prays for relief by asking this court to grant monetary damages by way of economic, compensatory, and punitive damages. The Plaintiff was harmed and lost any and all ability to go to trial due to the case being dismissed without prejudice. Thus losing possible relief for damages from a jury's verdict awarding a minimum of 100K to 3M in monetary damages due to a Medical Negligence (Sentinel Event) case. see, John Doe v. Roe Surgeon and Roe Hospital, (2008).

Defendants knew the stakes were very high and that there was a good chance Plaintiff more likely than not, would have prevailed in the lawsuit against Chi St. Luke's Baylor College of Medicine, due to a (nonradiopaque) surgical drapery towel being left inside Plaintiff's abdominal cavity. According to the Defendant BradShaw-Hull, the Department of Justice (U.S. Assistant Attorney Brad Gray) had asked and received via email Plaintiff's depositions that was used in Plaintiff's court case. Therefore assisting the U.S. Attorney with their investigation into the claims of doctor and Hospital fraud and negligence in a sealed qui tam lawsuit settled on Monday, June 24, 2024.

It resulted in the largest settlement to date for a case settling for $15 million. $7.5 million which was for restitution and or $3 million going to the whistleblower. The Defendant's deprived the Plaintiff of his right to competent counsel and good faith dealing. If this matter is dismissed, then future harm will be perpetuated onto the Plaintiff by way of allowing two injustices to go unpunished. I ask this court to hear both sides of this controversy in order to deliver due process for both the Plaintiff and the Defendant's. I do not wish for this court to make the Plaintiff adhere to an already breached contract by going through Alternative Dispute Resolution (ADR) process. Therefore, I ask leave of the court to allow the matter before it to continue.

Exhibit I

Spouses Affidavit concerning conversation between Plaintiff and Defendant BradShaw-Hull on August 03, 2022.

Exhibit II

Legal Service Agreement between Plaintiff and Defendants, signed on July 07, 2020 by Plaintiff.

Exhibit III

Plaintiff DD-214 Certificate Of Release Or Discharge From Active Duty

Exhibit IV

Makris Law Firm P.C., Bio, Founder Victor Nicholas Makris on MartinDale Hubble website.

Exhibit V

The Law Offices of Christopher BradShaw-Hull, Bio on MartinDale Hubble website.

Exhibit VI

Department Of Veterans Affairs VA Appointment Letter for Wilber Harris

Exhibit VII

U.S. Attorney's Office, Southern District of Texas Press Release

Exhibit VIII

Settlement emails exchange between BradShaw-Hull and Luccia Counsel for (BSLMC)

Exhibit IX

Email of depositions sent to U.S. Texas Attorney Assistant Office

Exhibit X

Painters, Law Firm article

Exhibit XI

News Article from the website Chron date of June 25, 2024

Exhibit XII

ABC13 Houston News (Doctor in whistleblower case) by Miya Shay date of June 25, 2024

Exhibit XIII

John Doe v. roe Surgeon and roe Hospital, 2008 WL 55453349 (2008)

Exhibit XIV

Expert witness W. O. Cramer, M.D., F.A.C.S. general Surgery review

Exhibit XV

Email exchange between Harris and BradShaw-Hull March 30, 2023

Exhibit XVI

Email exchange between Harris and BradShaw-Hull April 04, 2023

Exhibit XVII

Email exchange between Harris and BradShaw-Hull April 27, 2023

Exhibit XVIIII

Evidentiary Hearing Transcription 281.382.9862 on January 20, 2023 Houston, TX

Exhibit XIX

Letter to the Honorable Judge George C. Hanks Jr. concerning emails.

Exhibit XIX

5th. Circuit Court of Appeals Brief

I confirm that I have conferred with the opposing counsel in good faith regarding this motion, as required under local rule D.C.COLO.LCivR 7.1(a) [1].

Dated at Colorado Springs, CO, On Wednesday, August 28, 2024.

/s/ Wilber Harris

6445 Pitchfork Drive

Colorado Springs, CO 80922

Telephone: (719) 352-6159

E-mail: wilber_harris@hotmail.com

---

[1] [**Note:** Local Civil Rule D.C.COLOLCivR 7.1(a) requires a party (including an unrepresented party) to confer or make reasonable good faith efforts to confer with any opposing counsel or unrepresented party about the subject of their motion before filing the motion, and to describe the specific efforts to fulfill this duty. The duty to confer is not required, in certain exceptions. See D.C.COLOLCivR 7.1(b)(1)-(4).]

14